UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| James Paul Aery, | Case No. 21-cv-2375 (KMM/DLM) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| Nick Bender, Kyle Nohre, Patricia Grimsley, and Beltrami County, | |
| Defendants. | |

This matter is before the Court on Defendants' Motion for Summary Judgment. (Doc. 67.) The case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons stated below, the Court recommends that Defendants' Motion for Summary Judgment be granted, and claims against Defendants Nick Bender, Kyle Nohre, Patricia Grimsley, and Beltrami County be dismissed with prejudice.

## BACKGROUND

On October 25, 2021, Mr. Aery filed his Complaint under 42 U.S.C. § 1983 against Defendant Joshua Arhart. (Doc. 1.) Mr. Aery filed his First Amended Complaint on November 17, 2021. (Doc. 5.) On March 11, 2022, Defendant Arhart filed a Motion to Dismiss. (Doc. 18.) Before the Court decided Defendant Arhart's Motion to Dismiss, Mr. Aery filed a Motion to Amend his complaint a second time. (Doc. 28.) The Court then denied Defendant Arhart's Motion to Dismiss and granted Mr. Aery's Motion to Amend his complaint a second time on June 9, 2022. (Doc. 32.) Mr. Aery filed his Second

Amended Complaint against Defendants Birt, Bender, Nohre, Grimsley, and Beltrami County—the operative complaint in this case—the same day. (Doc. 33.)[1]

## I.      Mr. Aery's allegations.[2]

All of Mr. Aery's claims arise out of a traffic stop that occurred on October 6, 2018, in Beltrami County, Minnesota. (*Id.* at 4.) Mr. Aery was a passenger in the stopped vehicle and seated in the back seat when Beltrami County Sheriff's Deputies initiated the stop. (*Id.*) During the traffic stop, Mr. Aery was asked to exit the vehicle, was pat searched, and was then arrested. (*Id.* at 6.) Mr. Aery claims that Defendants Bender and Nohre violated his Fourth and Fourteenth Amendment rights by failing to intervene when Beltrami County Sheriff Deputy Brian Birt pat searched him during the traffic stop. (*Id.* at 10.) Mr. Aery next claims that Defendant Grimsley altered and amended a criminal complaint against him in violation of his constitutional rights. (*Id.* at 10–11.) Finally, Mr. Aery raises a *Monell*[3] claim against Defendant Beltrami County for allegedly failing to "train, supervise, or otherwise monitor its employees while supporting, creating, or adopting written and/or unwritten policies and/or customs in violation of [his] [Fourth] and [Fourteenth] [A]mendment rights." (*Id.* at 11.)

---

[1] Because Joshua Arhart was not named in Mr. Aery's Second Amended Complaint (Doc. 33 at 1), he was terminated as a named defendant on June 9, 2022 (Doc. 32 at 5). Brian Birt was not served according to Federal Rule of Civil Procedure 4(m) and was therefore dismissed without prejudice from this action on April 3, 2023. (Doc. 59.)
[2] Mr. Aery makes several allegations in his Second Amended Complaint against Deputy Brian Birt. (Doc. 33 at 9.) The Court does not address these allegations because Deputy Birt was terminated as a named defendant. (Doc. 59.)
[3] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

**II.     Defendants' Motion for Summary Judgment.**

Defendants argue that documentary evidence shows that there are no genuine issues of material fact, and Mr. Aery cannot establish any constitutional violations. Therefore, according to Defendants, summary judgment should be granted in their favor. And, Defendants argue, even if Mr. Aery could establish a constitutional violation, they are entitled to qualified immunity.

**STANDARD OF REVIEW**

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Fed. R. Civ. P. 56. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is material if it "might affect the outcome of the suit." *Id*. at 248. And a genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. When deciding a motion for summary judgment, a court "must view the evidence 'in the light most favorable to the opposing party,'" *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970)), drawing "all justifiable inferences" in the opposing party's favor, *Tolan*, 572 U.S. at 651 (quoting *Anderson*, 477 U.S. at 255) (further citations omitted)).

## ANALYSIS

**I.   Defendants Nohre and Bender are entitled to summary judgment on Mr. Aery's Fourth and Fourteenth Amendment claims.**

The Court first addresses Mr. Aery's claim that Defendants Nohre and Bender violated his Fourth and Fourteenth Amendment rights when they "failed to intervene on an illegal search of [him]" while "Deputy Brian Birt did a pat search and was looking for weapons." (Doc. 33 at 10.)

To establish Defendants' liability under § 1983, Mr. Aery "must show each individual defendant's personal involvement in the alleged violation." *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017) (further citations omitted). Mr. Aery is required to establish that Defendants Nohre and Bender bear "direct responsibility for [] the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (citing *Rizzo v. Goode,* 423 U.S. 362, 370–71, 375–77 (1976)) (further citations omitted). The theory of *respondeat superior* does not apply in § 1983 suits. *Cotton v. Hutto,* 577 F.2d 453, 455 (8th Cir. 1978) (per curiam).

The Court first addresses the question of whether Defendants Nohre and Bender were personally involved in the pat search of Mr. Aery. The evidence shows they were not. Defendants have produced a Beltrami County Sheriff's Department incident report from the October 6, 2018 traffic stop. The incident report shows that although Defendants Nohre and Bender were present during the traffic stop, neither conducted the pat search which Mr. Aery alleges violated his Fourth and Fourteenth Amendment rights. (Doc. 70, Ex. A at 5, 8.) According to the incident report, on October 6, 2018, Deputy Brian Birt stopped a

4

vehicle in Beltrami County after he observed the vehicle drive over the edge of the centerline. (*Id.* at 8.) Deputy Birt approached the vehicle and spoke with the driver. (*Id.*) While speaking with the driver, he observed a "micro baggie in plain view tucked into the area of the door handle." (*Id.*) Deputy Birt noted in his report that he "could see a visible amount of crystalline substance" in the baggie and based on his "prior training and experience suspected [the crystalline substance] was methamphetamine." (*Id.*)

> According to Deputy Birt's report
>
> James Aery [was] seated in the back driver's side seat [and deputies] asked [Mr.] Aery to exit the vehicle. [Deputy Birt] told [Mr.] Aery that [he] was going to check him for weapons and [Deputy Birt] observed [Mr. Aery] reach in his right jacket pocket and hold onto an item. This item was dropped to the ground and observed to be a micro bag with a crystalline substance in it. [Deputy Birt] placed [Mr.] Aery under arrest for possession of a controlled substance. [Deputy Birt] located a second micro bag in [Mr.] Aery's left pants pocket . . . . While [Deputy Birt] was searching [Mr. Aery] he made a spontaneous utterance . . . [i]n [Mr.] Aery's waistband [Deputy Birt] located 3 glass smoking pipes tucked into [Mr. Aery's] pants.

(*Id.*)

Defendant Nohre's report also shows that while he was present during the traffic stop, it was Deputy Birt who searched Mr. Aery. According to Defendant Nohre's report, he "had James Aery who was sitting in the rear driver side seat exit the vehicle[.]" (*Id.* at 5.) Defendant Nohre "observed [that Mr. Aery] was clenching his fist and tried to put it in his coat pocket[.]" (*Id.*) Then, Defendant Nohre "asked [Mr. Aery] what was in his hand[,] and [Mr. Aery] tried to pull [his hand] away." (*Id.*) Defendant Nohre stated in his report from the stop that

> I secured [Mr. Aery's] right arm and Deputy Bender and Birt secured his other arm. Deputy Bender advised he could see a micro baggie in [Mr. Aery's] hand. [Mr.

5

>Aery] was placed in handcuffs. *Deputy Birt then conducted a search of [Mr. Aery's] person.*

(*Id.*) (emphasis added).

The evidence that Defendants have submitted to the Court shows that Defendants Nohre and Bender were present when Mr. Aery was pat searched, but that it was Deputy Birt who pat searched Mr. Aery. In contrast, Mr. Aery has provided no evidence to support his claim that Defendants Nohre or Bender were personally involved in the pat search which he alleges violated his constitutional rights.

The Court now turns to Mr. Aery's claim that Defendants Nohre and Bender "failed to intervene" when Deputy Birt conducted "an illegal [pat] search" of Mr. Aery during the October 6, 2018 traffic stop. (Doc. 33 at 10.) Defendants assert that Mr. Aery has failed to allege an actionable § 1983 claim against Defendants Nohre and Bender because the Eighth Circuit does not recognize a law enforcement officer's duty to intervene outside of the use of excessive force.

A law enforcement officer has a duty to intervene when he knows another officer is using excessive force. *See Putman v. Gerloff,* 639 F.2d 415, 423 (8th Cir. 1981). To establish that Defendants Nohre and Bender violated their duties to intervene, Mr. Aery must show that "[Defendants Nohre and Bender] observed or had reason to know that excessive force would be or was being used [against him]," and "[Defendants Nohre and Bender] had both the opportunity and the means to prevent the harm from happening." *Nance v. Sammis*, 586 F.3d 604, 612 (8th Cir. 2009). But the "Eighth Circuit has declined to extend a duty to intervene to prevent constitutional violations, other than for violations

6

of excessive force." *Kavanaugh v. Edwards,* No. 19-cv-3256 (MTS), 2023 WL 2078534, at *3 (E.D. Mo. Feb. 17, 2023) (citing *Hess v. Ables*, 714 F.3d 1048, 1052 (8th Cir. 2013)); *see also Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012) ("A law enforcement officer who knows another officer is using excessive force has a duty to intervene [but] [w]e have not recognized a duty to intervene to prevent other constitutional violations.")

Mr. Aery does not claim, nor has he provided any evidence to support an allegation, that any law enforcement officer present during the traffic stop used excessive force against him. Even if Deputy Birt's search of Mr. Aery was constitutionally suspect, Mr. Aery does not claim it involved excessive force, nor does evidence in the record suggest that Deputy Birt used excessive force during the pat search or at any other time during the traffic stop. Because Mr. Aery does not allege that excessive force was used against him, Deputies Nohre and Bender cannot be held liable for failing to intervene to prevent the use of excessive force. *Halverson v. Schneider,* No. 15-cv-4297 (WMW/DTS), 2018 WL 3422075, at *4 (D. Minn. Apr. 25, 2018) ("Because Halverson has not alleged excessive force, his failure to intervene claim fails."), *R. & R. adopted*, 2018 WL 3421345 (D. Minn. July 13, 2018).

In his Response to Defendants' Motion for Summary Judgment, Mr. Aery contends that "Birt[,] Nohre[,] and Bender used excessive force without probable cause for arrest to effect an illegal search." (Doc. 78 at 5.) Despite his amendments, Mr. Aery did not raise this claim in any of his prior complaints. The addition of an excessive force claim at this late stage, and through a responsive pleading vehicle, is improper. *Embaye v. Minneapolis Police Dep't,* No. 14-cv-2896 (PJS/TNL), 2016 WL 3960374, at *13 (D. Minn. June 22,

7

2016) (citing *McDonald v. City of Saint Paul,* 679 F.3d 698, 709, n.8 (8th Cir. 2012)), *R. & R. adopted*, 2016 WL 3962867 (D. Minn. July 21, 2016); *see also Dale v. U.S. Steel Corp.,* No. 13-cv-1046 PJS/LIB, 2015 WL 4138869, at *9 (D. Minn. July 2, 2015) (holding that a party's addition of a claim for the first time in his response to summary judgment was not properly before the court). Therefore, Defendants Nohre and Bender are entitled to summary judgment on Mr. Aery's failure to intervene claims.

II. **Patricia Grimsley is entitled to summary judgment on Mr. Aery's § 1983 claims because she was not personally involved in any alleged violation of Mr. Aery's constitutional rights.**

The Court next examines Mr. Aery's claim that Defendant Grimsley falsified information in a criminal complaint against him.[4] Mr. Aery alleges that Defendant Grimsley "has a pattern of altering complaints to make them seem to meet certain parameters for probable cause while having facts left out like searching for weapons that officers claim to be doing 10-6-2018 when they violated [his] [Fourth] and [Fourteenth] amendment rights." (Doc. 33 at 10–11.) Defendants contend that Defendant Grimsley is entitled to summary judgment because there is no evidence that Defendant Grimsley was personally involved in any alleged violation of his constitutional rights.

---

[4] Mr. Aery made a nearly identical claim against Patricia Grimsley in a separate case in this District: *Aery v. Mend et al*, No. 21-cv-2442 (PJS/JFD). The court in that case also recommended granting summary judgment in favor of Defendant Grimsley because "Mr. Aery [did] not advance or articulate any factual support for his claim against Defendant Grimsley[.]" *Aery v. Mend*, No. 21-cv-2422 (PJS/JFD), 2023 WL 5280318, at *6 (D. Minn. July 21, 2023) (cleaned up)), *R. & R. adopted sub nom. Aery v. Billings*, 2023 WL 5279765 (D. Minn. Aug. 16, 2023).

8

Mr. Aery has provided no evidence to support his claim. Mr. Aery's Second Amended Complaint includes the state court file number 04-CR-18-3347, which by Mr. Aery's reference to being "imprisoned for 21 months," appears to be the file number for Mr. Aery's criminal case that resulted from his October 6, 2018 arrest. (*Id.* at 12.) But neither party has made the state criminal complaint part of the record of this case.

In support of their Motion for Summary Judgment, Defendants have provided an affidavit from Defendant Grimsley stating that she does not draft criminal complaints and did not draft the criminal complaint that resulted from Mr. Aery's October 6, 2018 arrest. (Doc. 71 ¶ 3.) Defendant Grimsley's affidavit also states that Defendant Grimsley was not present during the October 6, 2018 traffic stop from which Mr. Aery's constitutional claims arise. (*Id.* ¶ 4.) Mr. Aery has advanced no evidence to the contrary.

The Court finds no genuine dispute of material fact as to Defendants' assertion that Defendant Grimsley was not personally involved in any alleged deprivation of Mr. Aery's constitutional rights. Mr. Aery has provided no evidence to support his claim that Defendant Grimsley falsified any criminal complaints against him, let alone the complaint that resulted from his arrest on October 6, 2018. Therefore, the Court recommends that summary judgment should be granted in Defendant Grimsley's favor.

### III. Defendant Beltrami County is entitled to summary judgment on Mr. Aery's *Monell* claim.

Finally, the Court turns to Mr. Aery's *Monell* claim against Beltrami County. Mr. Aery claims that Beltrami County failed to "train, supervise, or otherwise monitor its employees while supporting, creating, or adopting written and/or unwritten policies and/or

9

customs in violation of [his] [Fourth] and [Fourteenth] Amendment rights." (Doc. 33 at 11–13.) Defendants contend that Defendant Beltrami County is entitled to summary judgment on Mr. Aery's *Monell* claim because he can neither establish the existence of an unconstitutional Beltrami County policy, nor can he establish that Beltrami County failed to train and/or supervise its employees.

Under 42 U.S.C. § 1983, Defendant Beltrami County may not be held vicariously liable for the unconstitutional acts of employees. *See Monell,* 436 U.S. at 694. However, Defendant Beltrami County may be held liable for the unconstitutional acts of its officials or employees when those acts implement or execute an unconstitutional municipal policy or custom. *See id.*; *see also Doe By & Through Doe v. Washington Cty.*, 150 F.3d 920, 922 (8th Cir. 1998). To avoid summary judgment, Mr. Aery must present evidence that a Beltrami County official policy or custom was the "moving force [behind] the constitutional violation." *Mettler v. Whitledge,* 165 F.3d 1197, 1204 (1999) (citing *Monell,* 436 U.S. at 694); *see also Board of Comm'rs v. Brown,* 520 U.S. 397, 400 (1997) (holding that only "deliberate" action by a municipality can meet the "moving force" requirement). In other words, Beltrami County may be liable for a constitutional violation if the violation was the result of an "official municipal policy," an "official custom," or "a deliberately indifferent failure to train or supervise." *Corwin v. City of Indep., MO.*, 829 F.3d 695, 699 (8th Cir. 2016) (citing *Monell*, 436 U.S. at 691) (further citation omitted). But to hold Defendant Beltrami County liable under *Monell* there must be a constitutional violation for which Beltrami County can be held liable in the first place. Because the Court recommends granting summary judgment in favor of each of the individual named Defendants in all of

Mr. Aery's constitutional claims, Defendant Beltrami County cannot be held liable under *Monell*. Therefore, the Court recommends that summary judgment be granted in Defendant Beltrami County's favor.

Furthermore, even if the Court recommended denying summary judgment on one or more of Mr. Aery's constitutional claims, the Court finds that Mr. Aery has provided no evidence to show a genuine dispute of material fact regarding a claim of an unconstitutional policy or custom, or the claim that Beltrami County failed "to train, supervise, or otherwise monitor its employees while supporting, creating, or adopting written and/or unwritten policies and/or customs in violation of [his] [Fourth] and [Fourteenth] Amendment rights." (Doc. 33 at 11–13.)

In his response to Defendants' Motion for Summary Judgment, Mr. Aery references a "Beltrami County Sheriff's Office Policy Manual – Mission Statement – Major Goals" and claims that "[t]his 'Major Goal' is instilled in an inappropriate context through a DTB (Daily Training Bulletin)." (Doc. 78 at 2.) Mr. Aery also lists several other court cases that he asserts "show [a] pattern" of conduct on behalf of Beltrami County employees. (*Id.* at 3–4.) However, Mr. Aery has made neither the Beltrami County Sheriff's Office Policy Manual, nor the several court cases he references, part of the record for this Court's consideration in deciding Defendants' Motion for Summary Judgment.

Therefore, the Court would still recommend summary judgment on Mr. Aery's *Monell* claim even if one or more of Mr. Aery's constitutional claims were to survive because Mr. Aery has presented no evidence that any such violation was the result of either

an official Beltrami County policy or custom, or Beltrami County's failure to train or supervise its employees.

## IV. Qualified immunity.

Defendants argue that even if the Court did not grant summary judgment in their favor, they are nevertheless entitled to qualified immunity. To survive a motion for summary judgment on qualified immunity grounds, Mr. Aery "must assert a violation of a constitutional right[,] demonstrate that the alleged right is clearly established[,] [and] raise a genuine issue of fact as to whether [Defendants] would have known that [their] alleged conduct would have violated [Mr. Aery's] clearly established right." *Brockington v. City of Sherwood, Ark.,* 503 F.3d 667, 672 (8th Cir. 2007) (quoting *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996) (cleaned up)). The threshold question is whether the evidence Mr. Aery presents establishes that Defendants' conduct violated a constitutional right. *Id*. (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)).

As discussed above, Mr. Aery failed to establish any constitutional violation. Therefore, he cannot overcome a qualified immunity defense on summary judgment. Because the evidence presented does not establish any violation, this Court need not and will not proceed with the qualified immunity analysis. *Brockington*, 503 F.3d at 672 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

## RECOMMENDATION

Accordingly, based on all the files, records, and proceedings above **IT IS RECOMMENDED** that:

1. Defendants' Motion for Summary Judgment (Doc. 67) be **GRANTED**; and

2. Claims against Defendants Nick Bender, Kyle Nohre, Patricia Grimsley, and Beltrami County be **DISMISSED WITH PREJUDICE**.

Date: January 30, 2024

*s/Douglas L. Micko*
DOUGLAS L. MICKO
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).